240 So.2d 679

**KING HOMES, INCORPORATED**

**v.**

**Robert W. ROBERTS and Bessie Roberts.**
**8 Div. 25.**

Court of Civil Appeals of Alabama.
Aug. 12, 1970.

Rehearing Denied Sept. 9, 1970.

Ford, Caldwell, Ford & Payne, Robert L. Hodges, Huntsville, for appellant.

Smith, Lammons & Weaver, Huntsville, for appellees.

**260**

WRIGHT, Judge.

Appellees, Mr. and Mrs. Roberts, filed suit in the Circuit Court of 'Madison County, Alabama, against appellant, King Homes, Incorporated. The complaint was in three counts. Count 1 for breach of warranty. Count 2 for misrepresentation and count 3 for negligent repair.

Appellant is a non-resident corporation, not qualified to do business in Alabama, nor does it have an appointed agent for service. Its principal place of business is in Elkhart, Indiana, where it is engaged in manufacturing mobile homes. Service of summons and complaint was obtained through the Alabama Secretary of State under the provisions of Title 7, Section 199(1); Code of Alabama 1940 as amended. Affidavit was made by appellees that appellant had performed work and services in this State, out of which a cause of action had arisen.

Appellant filed motion to quash service and a plea in abatement challenging the jurisdiction of the court on the ground that it was a non-resident corporation, not qualified to do business in Alabama, and alleging it had not done business nor performed work or service in the state. Upon hearing, the plea in abatement was denied by the court. Demurrer to the complaint and each count was filed, the complaint was amended and demurrer re-filed. Demurrer was overruled. Answer and pleas were filed by appellant. Demurrer to some of the pleas was sustained, and overruled as to others. Issue was joined on the remaining pleas with replication filed to one plea.

. Trial was held on January 8, 1969 before the judge, sitting without a jury, and a general judgment entered for plaintiff-appellees with damages assessed at $3,709.50. Motion for new trial was duly filed and the same denied by the court on June 11, 1969. This appeal followed.

The evidence tends to show that appellees, in the spring of 1965, went to the place of business of Perrylandings, Inc., located in Decatur, Alabama, for the purpose of buying a mobile home. After some negotiations with this company through its manager, B. R. Landers, a trade was accomplished whereby Perrylandings agreed to sell appellees a mobile home to be ordered from and constructed by King Homes, Inc. of Elkhart, Indiana. The order, a mobile home to be manufactured by appellants in accordance with specifications requested by Perrylandings, was placed by phone by Mr. Landers with appellant's sales manager in Elkhart. After completion, delivery was made to the lot of Perrylandings in Decatur via transport provided by appellant. Upon arrival in Decatur the home was inspected by Perrylandings and accepted by them with notation of certain deficiencies. Title was transferred to Perrylandings and payment of manufacturer's cost, plus cost of transport, was made by Perrylandings to appellant.

Sale of the home was subsequently made by Perrylandings to appellees by contract after oral assurance from appellant that observed shortages and deficiencies would be corrected.

The observed shortages and deficiencies at the time of delivery to Perrylandings were that some floor molding was broken and missing, and the type of oven and exterior door were different than allegedly ordered.

Perrylandings, after sale to appellees, transported the home to the lot of appel-

lees and installed it. Installation required "blocking" or leveling and placement of supports underneath the chassis, connecting water, sewer and power lines. Installation was a part of the sales contract between Perrylandings and appellees. A part of installation required the opening and setting of a "tip out" portion of the home. The "tip out" folds into the home while it is being transported. It was determined that the "tip out" did not work properly at this time and could not be unfolded without use of force.

Complaint of deficiencies and malfunction was made by appellees to Perrylandings, and by Perrylandings to appellant by phone and letter. A written warranty against defects in materials and quality of workmanship was extended by appellant and was in a drawer in the home when delivered to appellees. A card, returnable to appellant, was detached from the warranty and mailed by appellees as directed.

Some six weeks after delivery to appellees, or in September 1965, an employee of appellant appeared with a new oven which, with assistance from an employee of Perrylandings, he proceeded to install. He also re-blocked the home. After the re-blocking by appellant's employee, other problems appeared, such as warping of doors and walls, splitting of doors and walls, and rain leaked into the interior.

In October 1965, another employee of appellant arrived and attempted other repairs without improvement, but with added adverse results. With the onset of winter, certain pipes in the home froze and burst and the home could not be heated properly.

In February 1966, another employee of appellant appeared and attempted repairs but was not successful in remedying any of the problems. It was also found that an opening for an air circulation vent was not installed.

Suit was filed on December 5, 1966. There was evidence that other attempts at repair were made in August 1967.

Appellant's first argued assignments of error are assignments 1 and 2. They are argued together, and present the contention that error was committed by the overruling of appellant's plea in abatement.

The essence of the plea was that the court had no jurisdiction over the appellant to render an in personam judgment against it. This contention is based upon the proposition that appellant was a non-resident corporation, not qualified to do business in this state and without an appointed agent for service. It is argued that the evidence shows that appellant did not have sufficient nexus with the state for it to be subject to the jurisdiction of the courts of the state in an in personam action.

We think the evidence is clear that the appellant is a non-resident, non-qualified corporation. It did not have an appointed statutory agent for service of process in this state. (Title 7, Section 192, Code of Alabama 1940, as amended.) It had no resident agent or employee in Alabama who regularly and systematically conducted transactions for it. The relationship of appellant and Perrylandings was described as a "dealership," however, it was undisputed that Perrylandings purchased mobile homes from appellant and resold them to its customers. Perrylandings was free to sell any other mobile homes it wished. There was no requirement that it sell or not sell appellant's products. Orders were placed by phone from Perrylandings to appellant's plant in Indiana. Delivery was made by appellant's truck to Perrylandings in Decatur and title passed. Perrylandings was free to sell at any price it wished. Appellant paid nothing to Perrylandings and received nothing from it other than the invoice price on the mobile home, plus cost of transport.

The only contact between appellant and Perrylandings was by phone or letter and the drivers who made delivery. It is clear that the relationship of Perrylandings, Inc.

to appellant was that of an independent contractor.

Service of process was obtained upon appellant under the provisions of Title 7, Section 199(1), Code of Alabama 1940, as amended. The pertinent parts of that statute are as follows:

"§ 199(1) *Service on nonresident doing business or performing work or service in state.*—Any nonresident person, firm, partnership, general or limited, or any corporation not qualified under the Constitution and laws of this state as to doing business herein, who shall do any business or perform any character of work or service in this state shall, by the doing of such business or the performing of such work, or services, be deemed to have appointed the secretary of state, or his successor or successors in office, to be the true and lawful attorney or agent of such nonresident, upon whom process may be served in any action accrued or accruing from the doing of such business, or the performing of such work, or service, or as in incident thereto, by any such nonresident, or his, its or their agent, servant or employee * * *"

The courts of this state and the Supreme Court of the United States have declared the provisions of this statute as to substituted service to be clearly sufficient to meet the requirements of due process. New York Times v. Sullivan, 273 Ala. 656, 144 So.2d 25; 371 U.S. 946, 83 S.Ct. 510; 9 L.Ed.2d 496. The cited cases have made clear that the provisions in the statute as to "doing business" is a judicial question to be resolved by the existing facts in each case.

We shall now proceed to consider the question of whether appellant, under the facts of this case, was "doing business" in Alabama to sufficient extent to subject it to the jurisdiction of the courts of this state.

The power of a state court to enter binding judgments against persons or corporations not served with process with-in their boundaries, or without voluntary defense, has been considered by many courts since the case of Pennoyer v. Neff, 95 U.S. 714, 24 L.Ed. 565.

*Pennoyer* first applied the due process clause of the Fourteenth Amendment to such judgments, thus limiting the power of a state court to render judgment against non-resident defendants without personal service. Though holding that judgment in personam, without personal service upon the defendant was not binding because of lack of due process under the facts of that particular case, the court in Pennoyer v. Neff, supra, made the following statement:

"* * * Neither do we mean to assert that a State may not require a non-resident entering into a partnership or association within its limits, or making contracts enforceable there, to appoint an agent or representative in the State to receive service of process and notice in legal proceedings instituted with respect to such partnership, association, or contracts, or to designate a place where such service may be made and notice given, and provide, upon their failure, to make such appointment or to designate such place that service may be made upon a public officer designated for that purpose, or in some other prescribed way, and that judgments rendered upon such service may not be binding upon the non-residents both within and without the State * * *"

It is clear from subsequent decisions of the United States Supreme Court, that the above quoted statement opened the door for the doctrine of "consent" or "doing business" as a basis of jurisdiction in personam of a state court over a non-resident corporation. It also appears to form the foundation for the enactment of statutes such as Section 199(1), supra, providing for a substitute for personal service sufficient to satisfy requirements of "due process." International Shoe Co. v. State of Washington, 326 U.S. 310, 66

S.Ct. 154, 90 L.Ed. 95; McGee v. International Life Ins. Co., 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223; Hess v. Pawloski, 274 U.S. 352, 47 S.Ct. 632, 71 L.Ed. 1091.

At the risk of verboseness, we quote from the opinion of the United States Supreme Court in the case of McGee v. International Life Ins. Co., supra:

"* * * Since Pennoyer v. Neff, 95 U.S. 714, 24 L.Ed. 565, this Court has held that the Due Process Clause of the Fourteenth Amendment places some limit on the power of state courts to enter binding judgments against persons not served with process within their boundaries. But just where this line of limitation falls has been the subject of prolific controversy, particularly with respect to foreign corporations. In a continuing process of evolution this Court accepted and then abandoned 'consent,' 'doing business,' and 'presence' as the standard for measuring the extent of state judicial power over such corporations. * * * More recently in International Shoe Co. v. State of Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95, the Court decided that 'due process requires only that in order to subject a defendant to a judgment in personam, if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'

"Looking back over this long history of litigation a trend is clearly discernible toward expanding the permissible scope of state jurisdiction over foreign corporations and other nonresidents. In part this is attributable to the fundamental transformation of our national economy over the years. Today many commercial transactions touch two or more states and may involve parties separated by the full continent. With this increasing nationalization of commerce has come a great increase in the amount of business conducted by mail across state lines. At the same time modern transportation and communication have made it much less burdensome for a party sued to defend himself in a state where he engages in economic activity * * * It is sufficient for purposes of due process that the suit was based on a contract which had substantial connection with that State * * *"

This quotation succinctly discloses the trend toward expanding the scope of a state's jurisdiction over the activities of non-resident corporations within its boundaries, and widens the previous definitions of "doing business" or "nexus." The recent decision of the United States Court of Appeals, Fifth Circuit, in the case of Elkhart Engineering Corp. v. Dornier Werke, 343 F.2d 861, is in harmony with the trend, and construes the provisions of the very statute involved here, Section 199(1), supra.

Although the evidence was to the effect that appellant's activities in this state were not as broad as those set out in Boyd v. Warren Paint & Color Co., 254 Ala. 687, 49 So.2d 559, and Thompson Hayward Chemical Co. v. Childress, 277 Ala. 285, 169 So.2d 305, we do not consider the opinions in those cases to require that in personam jurisdiction in every case must meet the factual situation as stated therein. In fact, Justice Simpson stated the proper rule in Boyd v. Warren Paint & Color Co., supra, as follows:

"* * * In determining the question, we are not here concerned with state law, since it is not controlling. The issue is regarded in this jurisdiction as a federal question of whether subjection of the defendant to this sovereignty comports with federal due process * * * So, the question is whether appellee corporation was amenable to the jurisdiction of the court by reason of its activities in Alabama within the limitations of the due process clause of the Fourteenth Amendment

and the authorities governing. We look then to the federal decisions for guidance * * * "

We consider that the holding of McGee v. International, supra, and Elkhart Eng. Corp. v. Dornier, supra, provides the necessary federal authority to apply to the facts of the instant case.

That is, there was a contract, the manufacturer's warranty, which had substantial connections with a resident of this state, and that appellant performed work and service in this state from which a cause of action occurred.

The warranty was extended and accepted in this state. Repairs were undertaken by employees of appellant. There was involved a mobile home of a value in excess of $7,000. There was no denial of sufficient notice of suit and reasonable opportunity by appellant to defend. There could only be claimed inconvenience of an Indiana corporation defending a lawsuit in Alabama. Such is not a denial of due process, and in the modern practice of commercial transactions does not offend "traditional notions of fair play and substantial justice."

It is our opinion that the present trend is fair and proper. That a foreign corporation, not qualified to do business under the laws of this state, but who does do business by selling its products to residents of this state, directly or through dealers, and extends written warranties thereon, which are accepted by the purchaser in this state, such corporation should be subject to suit and judgment in personam upon service which provides notice and reasonable opportunity to appear and defend. To provide otherwise would be to deny the residents of this state an effective means of redress for purchase of inferior and defective products.

█ We find that the trial court did not err in denying appellant's plea in abatement. That appellant was doing business in Alabama and performed services or work within the meaning of Title

7, Section 199(1), 1940 Code of Alabama, and to such an extent that the court below obtained jurisdiction for an action in personam when such action arose out of or accrued from the doing of such business or performing of services or work.

The above holding suffices to dispose of the cause of action stated in counts 1 and 3 of the complaint. We do not need to express ourselves as to the cause of action stated in count 2. The issue of whether there was an agency or employee-employer relationship between appellant and Perrylandings, sufficiently established by the evidence to require appellant to be liable for misrepresentation by the manager of Perrylandings to appellees, was not presented on appeal.

█ In any event, had it been so raised and presented, the judgment would not be subject to error on that ground. It is the law in this state that if there is a good count or counts in the complaint, supported by the evidence, and a general judgment, the judgment will be referred to the good count, or counts, and will not be reversed because of the court's erroneous rulings as to defective counts. Trammell v. Robinson, 34 Ala.App. 91, 37 So.2d 142; McClelland v. Costen, 227 Ala. 267, 149 So. 697; Flagg Utica Corp. v. City of Florence, 275 Ala. 475, 156 So.2d 338.

Appellant assigns as error the overruling of its demurrer to the complaint as amended. The argument is presented that the allegation in count 1, that timely notice was given to appellant of its breach of warranty, was insufficient under the requirements of Title 7, Section 55, Code of Alabama 1940, and under the ruling in the case of Smith v. Pizitz, 271 Ala. 101, 122 So.2d 591.

Title 7, Section 55 provides only that notice of breach of warranty must be given within a reasonable time after the buyer knows, or ought to know, of such breach.

The cited case of Smith v. Pizitz, supra, holds that an allegation of notice in the

complaint is a condition precedent to recovery. The court did not discuss the requirement of such allegation or how it should be phrased. We would assume that an allegation in the words, or substantially in the words of the statute would be sufficient.

As against demurrer, we think an allegation of "timely notice" is sufficiently synonymous with "reasonable notice." Words and Phrases, Permanent Edition, 41A, page 348.

We have neither found nor been cited to any Alabama case which would make the question any more certain. We believe the determination of whether "timely notice" was "reasonable notice" would be a matter of fact for the determination of the trial court and would not be a subject for our review, unless clearly and palpably wrong. Learned v. Hamburger, 245 Mass. 461, 139 N.E. 641.

Assignment of error 12 charges that appellant's plea of the statute of limitation of one year was good as to count 3 of the complaint and barred recovery thereunder.

The amended count 3 of the complaint charges that appellant undertook repairs of the mobile home on September 16, 1965, and continued repair efforts thereafter until February 1, 1966. The evidence indicated several repair efforts by appellant. These efforts were separate and weeks or months apart. They involved repairs of different areas of the home and were undertaken in response to different complaints. The evidence showed different resultant injury and damage.

The suit was filed December 5, 1966. The date of the first and second alleged negligent repair was more than one year prior to filing of suit.

It is the rule that the time of limitation begins to run when injury happens or damage accrues, and not from the date of the act causing the injury or damage. Brotherhood of Locomotive Firemen & Engineers v. Hammett, 273 Ala. 397, 140 So.2d 832; Corona Coal Co. v. Hendon, 213 Ala. 323, 104 So. 799. It is appellees' apparent argument that the negligence charged was a continuing act occurring over months, and that the statute of limitations did not begin to run until such repairs ceased and all damages therefrom had accrued. We cannot accept this argument. We think the facts are clear that each act of repair in response to a complaint of appellees was a separate act, and if negligent and resulting in damage, gave rise to a separate cause of action. Since it was shown that resulting damage appeared immediately following such acts, it is clear that those incidents of negligent repair occurring more than one year before suit was filed were barred by the statute.

We think appellant's contention as to the statute of limitation of one year barring recovery under count 2 of the complaint is equally well taken. Count 2 is based upon a charge of misrepresentation or fraud in the sale of the mobile home to appellees. It is charged the misrepresentations were made upon the sale of the mobile home to appellees on July 29, 1965. Such date was more than one year prior to the filing of suit on December 5, 1966.

Title 7, Section 42, Code of Alabama 1940, provides

"In actions seeking relief on the ground of fraud where the statute has created a bar, the cause of action must not be considered as having accrued until the discovery by the aggrieved party of the fact constituting the fraud, after which he must have one year within which to prosecute his suit."

Count 2 shows on its face that it was barred by the statute of limitations of one year—Title 7, Section 26, Code of Alabama 1940. When it appears on the face of a complaint that an action is barred by a statute of limitations, the burden is upon the plaintiff to show facts which

bring his right of action within the provisions of Title 7, Section 42, supra. Section 42 does not cut down the applicable statute of limitations, it merely extends the right to sue after discovery of fraud which failure of discovery prevented his suing within the statute. Section 42 has no application when plaintiff knew of, or discovered his right of action, as much as one year before it was barred. Van Antwerp v. Van Antwerp, 242 Ala. 92, 5 So.2d 73, provides the key to the meaning and effect of Title 7, Section 42, supra. It is too often misunderstood.

■ We conclude that the evidence in this case was clear that plaintiffs were aware of the alleged misrepresentation, and that their cause of action had accrued more than one year prior to filing suit.

As in our previous discussion of the possible failure of plaintiff's case as to count 2, our discussion of the application to it of the plea of a statute of limitation has been solely academic. Count 1 is a valid and good count to which a general judgment may be directed. If all other counts be defective, barred by statutes of limitations or unsupported by the evidence, and the good count is sustained by the evidence, the erroneous rulings by the trial court as to the other counts is not reversible error.

! Appellant assigns as error that there was not sufficient or legal proof of damages upon which the court could base its judgment.

. Since we have concluded that the judgment must be directed to count 1 of the complaint, we will consider this assignment only in relation to count 1.

■ Title 57, Section 75, defines the measure of damages for breach of warranty as "the loss directly and naturally resulting, in the ordinary course of events, from the breach of warranty." Without discussing in detail the evidence before the trial court as to damages, we consider there was a sufficiency from which the

court could, and did, reach a determination as to the amount. The conclusion of fact from the evidence, when the trial judge heard the evidence sitting as a jury, has the same effect as a verdict of a jury. Water Works Board of Town of Parrish, v. White, 281 Ala. 357, 202 So.2d 721.

■ It appears that this case presents an example of the benefit of using the provisions of Title 7, Section 262, Code of Alabama 1940. If defendant had filed a written request for a special finding of fact by the trial court, it might have developed that the judgment entered could not be directed to count 1 on the facts presented. In the absence of a special finding we must presume that the trial court found sufficient facts to sustain a judgment as to the count in the complaint which was not demurrable or recovery thereon, barred by a statute of limitation.

It is our opinion that the judgment below must be affirmed.

Affirmed.

## ON REHEARING

On application for rehearing, appellant submits that our determination of jurisdiction of the Alabama Court over appellant was based solely upon the shipment by appellant of the trailer into this state. Therefore if title to the trailer was not in appellant as it entered Alabama, there would be no doing of business by appellant in this state to give our Courts jurisdiction. It is further argued that there was no title to the property in appellant as it came into Alabama. Since it was shown to be sold F.O.B. Elkhart, Indiana, and transport costs were paid by purchaser, this title passed at point of origin.

We assure appellant that our determination of jurisdiction was not based solely upon the sale of the trailer to a purchaser in Alabama with title passing in this state. An examination of our original opinion will disclose that primarily, jurisdiction was based upon the performance of work and

service and the extending and acceptance of the warranty in this state. It was not necessary to our decision that we determine as a matter of fact when title to the trailer passed and we did not do so.

The general rule is stated by appellant as follows:

"The general rule is that delivery of personal property by the seller to a carrier F.O.B. the seller's place of business vests title to the property in the buyer upon delivery to the carrier."

We would suggest to appellant that this stated "general rule" be re-examined for correctness and that it be compared with the "general rule" as stated in State v. Matthews Electric Supply Co., 284 Ala. 9, 221 So.2d 126.

We think it will appear that the passing of title is determined by the intent of the parties to the sale and not by the delivery of the merchandise to a carrier. (Title 57, Sections 24, 25, Code of Alabama 1940, Recompiled 1958); Hamm v. Continental Gin Co., 276 Ala. 611, 165 So.2d 392; State v. Mobile Stove & Pulley Mfg. Co., 255 Ala. 617, 52 So.2d 693.

Without deciding as a matter of fact the time and place of passing of title, we would point out that there was evidence that in spite of an alleged F.O.B. Elkhart price quotation and an additional charge for transportation, such transport was by appellant's own tractor, delivery was not complete until inspection and approval of the trailer at destination, and sales price was not paid until notice of delivery and acceptance was given. We believe it also apparent from the evidence that all parties considered any loss in transit to be that of the seller.

With such evidence it would be a question of fact as to when and where title passed and the so-called general rule would not be conclusive. State v. Matthews Electric Supply Co., supra.

Opinion extended: application for rehearing denied.